UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KEITH T. CLARK                                          **REPORT**
                              Plaintiff,                 **and**
                                                  **RECOMMENDATION**
        v.
                                                  **09-CV-00841A(F)**
MICHAEL J. ASTRUE,
Commissioner of Social Security,

                              Defendant.
_____

APPEARANCES:          DENNIS C. GAUGHAN
                      Attorney for Plaintiff
                      PAUL M. RYTHER, of Counsel
                      6161 South Park Avenue
                      Hamburg, New York 14075

                      WILLIAM J. HOCHUL, JR.
                      United States Attorney
                      Attorney for Defendant
                      KEVIN D. ROBINSON
                      Assistant United States Attorney, of Counsel
                      Federal Centre
                      138 Delaware Avenue
                      Buffalo, New York 14202

## JURISDICTION

        This action was referred to the undersigned by Honorable Richard J. Arcara on

December 4, 2009. The matter is presently before the court on motions for judgment on

the pleadings filed on May 3, 2010, by Defendant (Doc. No. 7), and on May 3, 2010, by

Plaintiff (Doc. No.  10).

## BACKGROUND

        Plaintiff Keith T. Clark ("Plaintiff"), seeks review of Defendant's decision denying

him Social Security Disability Insurance benefits ("SSDI") under Title II of the Social

Security Act ("the Act"). In denying Plaintiff's application for disability benefits,

Defendant determined Plaintiff had the severe impairments of irreparable left rotator

cuff repair, and cervical spine degenerative disc disease. Defendant further determined

Plaintiff's gastroesophageal reflux disease ("GERD"), hypertension, emphysema,

anxiety, history of a fractured elbow, and anxiety were not severe, and that Plaintiff was

not disabled at any time through the date of the application until the date of the hearing

onFebruary 19, 2009. (R. 19).

## PROCEDURAL HISTORY

Plaintiff filed an application for disability benefits on August 28, 2006 (R. 94), that

was initially denied by Defendant on January 23, 2007. (R. 55). Pursuant to Plaintiff's

request, filed May 7, 2007 (R. 59), a hearing was held before an Administrative Law

Judge ("the ALJ") on February 19, 2009, in Buffalo, New York. (R. 26-49). The Plaintiff,

represented by Dennis C. Gaughan, Esq., testified and appeared at the hearing.

Testimony was also given by vocational expert Jay A. Steinbrenner ("Steinbrenner")

("the VE"). (R. 43-49). The ALJ's decision denying the claim was rendered on April 23,

2009.[1] (R. 11-23). On June 22, 2009, Plaintiff requested review of the ALJ's decision by

the Appeals Council. (R. 5-7). The ALJ's decision became Defendant's final decision

when the Appeals Council denied Plaintiff's request for review on July 27, 2009. (R. 1-

4). This action followed on September 25, 2009, in which Plaintiff alleges the ALJ erred

---

[1] Plaintiff asserts benefits subsequently awarded on April 24, 2009, based on an application later filed on the same record, are dispositive to a finding of disability in this proceeding. Although subsequent social security disability awards on the same record are not binding on a review of a plaintiff's earlier application, the subsequent decision "is evidence 'of facts that existed at the time of . . . [the earlier] dispositive proceeding . . . .'" *Mikol v. Barnhart*, 554 F. Supp. 2d 498, 501 (S.D.N.Y. 2008) (quoting *Int'l Board of Teamsters*, 247 F. 3d 370, 392 (2d. Cir. 2001)).

by failing to consider him disabled as of August 28, 2006, the date the disability application was filed. (Doc. No. 1).

Following the filing of Defendant's answer on December 2, 2009, including the record of the administrative proceedings (Doc. No. 4), on May 3, 2010, Defendant filed the instant motion for judgment on the pleadings (Doc. No. 7) ("Defendant's motion") together with a memorandum of law (Doc. No. 8) ("Defendant's Memorandum"). Plaintiff filed a motion for judgment on the pleadings ("Doc. No. 10) ("Plaintiff's motion") on May 3, 2010. Oral argument was deemed unnecessary. As noted, Plaintiff was granted benefits on April 24, 2009, Plaintiff's motion at 2, for a later filed claim. As such, the instant action seeks disability benefits for the closed period of August 28, 2006 through April 23, 2009.

Based on the following, Plaintiff's motion should be GRANTED; Defendant's motion should be DENIED, and the Clerk of the Court should be directed to close the file.

## **FACTS**[2]

Plaintiff, was born on December 4, 1956, completed a GED, and worked as a machine operator from 1991 until 2002, and a restaurant cook from 2002 until August 28, 2006, the alleged date of disability. (R. 100-104). At the date of the hearing on April 23, 2009, Plaintiff was married, and lived with his wife and daughter. (R. 107). Plaintiff alleges he is unable to work because of an irreparable rotator cuff repair, cervical pain, hypertension, anxiety, GERD, and history of a fractured elbow. (Doc. 1).

---

[2]Taken from the pleadings and the administrative record.

On September 20, 2006, Kristen Robillard, M.D. ("Dr. Robillard"), Plaintiff's treating physician, performed a comprehensive physical examination on Plaintiff. (R. 300). Dr. Robillard reported Plaintiff was taking several medications including Enalapril (hypertension), Omeprazole (ulcer/GERD), and Valium (anti-anxiety). *Id*. On October 31, 2006, John Schwab, D.O. ("Dr. Schwab"), performed a consultative internal medicine examination on Plaintiff, and noted Plaintiff exhibited normal gait, used no assistive devices, needed no help changing for the exam, or getting on and off the exam table, and was able to rise from a chair without assistance. (R. 276). Dr. Schwab noted Plaintiff complained of pain in his left arm with trembling, that Plaintiff's pain was a ten out of ten on a ten point scale (R. 275), and opined Plaintiff "ha[d] a moderate restriction to raise his left arm above shoulder height due to decreased ROM [range of motion] of the left shoulder." (R. 278). Plaintiff's right shoulder range of motion was 150 degrees in forward elevation, 150 degrees abduction (movement away from the axis of the body), 80 degrees adduction (movement toward the midline of the body). Plaintiff's left shoulder range of motion was 70 degrees in forward elevation, 80 degrees abduction, and 20 degrees left adduction. *Id*.

On October 31, 2006, Thomas Ryan, PhD. ("Dr. Ryan") completed a psychiatric evaluation on Plaintiff, and opined Plaintiff was able to "follow and understand simple directions, perform simple tasks, maintain attention and concentration, maintain a regular schedule unless his health interfere[d] . . . [wa]s capable of learning new tasks . . . [and] may have difficulty with complex tasks if physical [*sic*] involved." (R. 282-84). Dr. Ryan diagnosed Plaintiff with adjustment disorder, NOS (not otherwise specified), and noted Plaintiff's prognosis was "fair" with regard to his psychiatric condition

4

because Plaintiff experienced frustration as a result of his physical limitations, opined Plaintiff's test results were consistent with stress related problems, but that Plaintiff's stress problems were not significant enough to interfere with Plaintiff's ability to function on a daily basis. *Id*.

On October 31, 2006, Jitendra M. Sanghvi, M.D. ("Dr. Sanghvi") evaluated an X-ray of Plaintiff's left shoulder that revealed "chronic superior subluxation [dislocation] of the head of the humerus [upper arm or shoulder] in relationship to the glenoid fossa [shoulder socket] causing narrowing of the subacromion space which could lead to impingement of the rotator cuff." (R. 279).

On December 4, 2006, Dr. Gosy examined Plaintiff, who complained of intermittent swelling and burning sensations of the left hand, limited range of motion of the left shoulder, and pain in the cervical spine area (R. 290), reviewed an MRI taken November 15, 2006, by Howard L. Stoll, III, M.D. ("Dr. Stoll") of Plaintiff's left shoulder, and noted the MRI test demonstrated "a complete tear of the supraspinatus tendon [tendon of the rotator cuff] on the left side . . . subacromial space (space beneath the top of the shoulder) narrowing with degenerative change of the posterior lateral humeral head," and that Dr. Gosy "support[ed] [Plaintiff's] application for SSD." (R. 291)

On December 19, 2006, Dr. Robillard, examined Plaintiff, administered a flu shot, and noted Plaintiff's anxiety was well controlled with Valium (medication used to treat anxiety and nervousness). (R. 301). Dr. Robillard noted Plaintiff had recently been evaluated by Dr. Gosy for his left shoulder and that an MRI showed "a complete rupture of the supra spinatus tendon [tendon that runs from the top of the shoulder blade to the humerus bone]." (R. 301). Dr. Robillard's assessment was anxiety, uncontrolled

hypertension, GERD, and left shoulder rotator cuff tear with impingement syndrome. *Id*. Plaintiff was referred to Dr. Moscato for follow-up on his left shoulder impairment. *Id*.

On January 4, 2007, clinical psychologist M. Totin, ("Psychologist Totin") completed a psychiatric review technique on Plaintiff that showed Plaintiff exhibited mild limitation to restriction of activities of daily living, and difficulty maintaining concentration, persistence or pace. (R. 323). Psychologist Totin opined Plaintiff was capable of performing simple tasks, following simple directions, making adequate decisions, but that Plaintiff may have difficulty with complex tasks. *Id*.

On January 8, 2007, Social Security Disability Examiner J. Hartner[3] ("Hartner") completed a physical residual functional capacity assessment on Plaintiff that showed Plaintiff able to frequently lift up to ten pounds, stand, sit, or walk up to six hours in an eight hour day, and limited in his ability to push or pull with his upper extremities. (R. 328). Upon examination, Plaintiff was limited in the ability to reach in all directions, exhibited numbness in the ring and middle finger verified by pinprick, and trembling in his left arm with exertion. (R. 329). Plaintiff's left shoulder range of motion was seventy degrees in forward elevation, abduction 80 degrees, adduction 70 degrees, and Plaintiff exhibited full range of motion of the right shoulder, bilateral elbows and wrists, and a grip strength of 5/5 bilaterally. *Id*.

On March 22, 2007, Lisa A. Daye, M.D. ("Dr. Daye") performed an orthopedic examination on Plaintiff, and provided a second opinion confirming Plaintiff's complete left shoulder rotator cuff tear. (R. 339).

---

[3]Whether J. Hartner is a medical doctor or other medical professional is not indicated in the record.

On April 19, 2007, Dr. Robillard examined Plaintifff who complained of increased tendency to drop things, and upper extremity numbness and weakness. (R. 410). A check-up with Dr. Robillard on May 9, 2007, showed Plaintiff with anxiety, GERD, and hypercholesterolemia (high cholesterol). (R. 413). A follow up visit with Dr. Robillard on July 24, 2007, showed Plaintiff's blood pressure well controlled with medication. (R. 414).

On August 29, 2007, Plaintiff visited Blanka Heary, RPA-C ("Physician Assistant Heary"), a pain specialist who worked under the supervision of Dr. Gosy, and opined Plaintiff was unable to lift and carry more than five pounds on the left, and that Plaintiff should avoid any repetitive use of the upper extremities, overhead activity, and extreme temperature and humidity. (R. 353).

On October 26, 2007, Plaintiff visited Dr. Robillard for a routine visit and received a flu shot. (R. 416). On March 4, 2008, Dr. Robillard noted Plaintiff "[wa]s a Vietnam vet and did have some ptsd [post traumatic stress disorder] in relation [sic]. At times will have nightmares . . . difficulties at times with anger management, irritability. Valium is used nightly as symptoms worsen prior to bedtime. Symptoms are very well controlled." (R. 418).

On September 19, 2008, Plaintiff was hit by an automobile door and suffered a fractured left elbow. (R. 438, 443). A pre-operative examination with Dr. Robillard showed Plaintiff with upper extremity arm pain at a level of ten of ten on a ten point scale. *Id*.

On September 30, 2008, Paul Paterson, M.D. ("Dr. Paterson"), performed a left elbow radial head replacement on Plaintiff. (R. 433). A post surgical examination by Dr.

Paterson on Plaintiff November 25, 2008, showed Plaintiff's flexion measured 120 degrees, extension measured (minus) 5 degrees, pronation measured 80 degrees. (R. 429). An X-ray November 25, 2008, showed Plaintiff's left elbow joint prosthesis was in place with no evidence of loosening or other complications. *Id*. Plaintiff's surgical sutures were removed on October 15, 2008, by physician assistant Mark Orlowski. (R. 433).

On January 6, 2009, Dr. Robillard completed a medical examination for employability assessment on Plaintiff that showed Plaintiff unable to lift more than three pounds with his left arm, and that Plaintiff exhibited very limited functional limitations to his capacity for lifting, carrying, pushing, pulling, bending, using hands, maintaining basic standards of personal hygiene and grooming, and the ability to function in a work setting at a persistent pace. (R. 449).

On February 5, 2009, in a letter to Plaintiff's attorney, Dr. Robillard opined Plaintiff's limitations included "total permanent disability, he can not use his left upper extremity and is left-hand dominant, has trouble performing his activities of daily living, such as grooming, cooking . . . and often drops objects." (R. 448).[4]

## DISCUSSION

### 1.  Disability Determination Under the Social Security Act

An individual is entitled to disability insurance benefits under the Social Security

---

[4] Plaintiff alleges the full records of Dr. Robillard were not reviewed by the Appeals Council. However, the record reflects the Appeals Council received and reviewed Dr. Robillard's complete records on January 27, 2009, the date of the Appeals Council's decision. (Doc. No. 1).

Act if the individual is unable

> to engage in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment which
> can be expected to result in death or which has lasted or
> can be expected to last for a continuous period of not less
> than 12 months. . . . An individual shall be determined to be
> under a disability only if his physical or mental impairment or
> impairments are of such severity that he is not only unable
> to do his previous work but cannot, considering his age,
> education, and work experience, engage in any other kind of
> substantial gainful work which exists in the national
> economy.

42 U.S.C. §§ 423(d)(1)(A) & (2)(A), and 1382c(a)(3)(A) & (C)(I).

Once a claimant proves he or she is severely impaired and unable to perform any past

relevant work, the burden shifts to the Commissioner to prove there is alternative

employment in the national economy suitable to the claimant. *Parker v. Harris,* 626 F.2d

225, 231 (2d Cir. 1980).


A.    **Standard and Scope of Judicial Review**

The standard of review for courts reviewing administrative findings regarding

disability benefits, 42 U.S.C. §§ 401-34 and 1381-85, is whether the administrative law

judge's findings are supported by substantial evidence. *Richardson v. Perales*, 402 U.S.

389, 401 (1971). Substantial evidence requires enough evidence that a reasonable

person would "accept as adequate to support a conclusion." *Pollard v. Halter,* 377 F.3d

183, 188 (2d Cir. 2004) *citing Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co.*

*v. NLRB*, 305 U.S. 197, 229 (1938)).

While evaluating a claim, the Commissioner must consider "objective medical

facts, diagnoses or medical opinions based on these facts, subjective evidence of pain

or disability (testified to by the claimant and others), and . . . educational background, age and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)). If the opinion of the treating physician is supported by medically acceptable techniques and results from frequent examinations, and the opinion supports the administrative record, the treating physician's opinion will be given controlling weight. 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d)*; Scherler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993).

The Commissioner's final determination will be affirmed, absent legal error, if it is supported by substantial evidence. *Dumas v. Schweiker, supra*, at 1550; 42 U.S.C. §§ 405(g) and 1383(c)(3). "Congress has instructed . . . that the factual findings of the Secretary,[5] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability insurance benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). The first step is to determine whether the applicant is engaged in substantial gainful activity during the period of which benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b). If the claimant is engaged in such activity the inquiry ceases and the claimant is not eligible for disability benefits. *Id.* The next step is to determine whether the applicant has a severe impairment which

---

[5] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

significantly limits the physical or mental ability to do basic work activities as defined in the applicable regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Absent an impairment, the applicant is not eligible for disability benefits. *Id.* Third, if there is an impairment and the impairment, or an equivalent, is listed in Appendix 1 of the regulations and meets the duration requirement, the individual is deemed disabled, regardless of the applicant's age, education or work experience, 20 C.F.R. §§ 404.1520(d) and 416.920(d), as, in such a case, there is a presumption the applicant with such an impairment is unable to perform substantial gainful activity.[6] 42 U.S.C. §§ 423(d)(1)(A) and 1382(c)(a)(3)(A); 20 C.F.R. §§ 404.1520 and 416.920. *See also Cosme v. Bowen*, 1986 WL 12118, * 2 (S.D.N.Y. 1986); *Clemente v. Bowen*, 646 F.Supp. 1265, 1270 (S.D.N.Y. 1986).

However, as a fourth step, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" and the demands of any past work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the applicant can still perform work he or she has done in the past, the applicant will be denied disability benefits. *Id.* Finally, if the applicant is unable to perform any past work, the Commissioner will consider the individual's "residual functional capacity," age, education and past work experience in order to determine whether the applicant can perform any alternative employment. 20 C.F.R. §§ 404.1520(f), 416.920(f). *See also Berry v. Schweiker, supra*, at 467 (where impairment(s) are not among those listed, claimant must show that he is without "the residual functional capacity to perform [his]

_____

[6] The applicant must also meet the duration requirement which mandates that the impairment must last or be expected to last for at least a twelve-month period. 20 C.F.R. §§ 404.1509 and 416.909.

past work"). If the Commissioner finds that the applicant cannot perform any other work, the applicant is considered disabled and eligible for disability benefits. *Id.* The applicant bears the burden of proof as to the first four steps, while the Commissioner bears the burden of proof on the final step relating to other employment. *Berry, supra*, at 467. In reviewing the administrative finding, the court must follow the five-step analysis to determine if there was substantial evidence on which the Commissioner based the decision. *Richardson v. Perales*, 402 U.S. 389, 410 (1971).

### B.    Substantial Gainful Activity

The first inquiry is whether the applicant engaged in substantial gainful activity. "Substantial gainful activity" is defined as "work that involves doing significant and productive physical or mental duties" done for pay or profit. 20 C.F.R. § 404.1510(a)(b). Substantial work activity includes work activity that is done on a part-time basis even if it includes less responsibility or pay than work previously performed. 20 C.F.R. § 404.1572(a). Earnings may also determine engagement in substantial gainful activity. 20 C.F.R. § 404.1574. In this case, the ALJ concluded Plaintiff did not engage in substantial activity since August 28, 2006, the alleged onset date. (R. 14). Plaintiff does not contest this finding.

### C.    Severe Physical or Mental Impairment

The second step of the analysis requires a determination whether Plaintiff has a severe medically determinable physical or mental impairment that meets the duration requirement in 20 C.F.R. § 404.1509 ("§ 404.1509), and significantly limits the Plaintiff's

ability to do "basic work activities." The Act defines "basic work activities" as "abilities and aptitudes necessary to do most jobs," and includes physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b).

Here, the ALJ found Plaintiff had severe impairments of irreparable left rotator cuff tear and cervical spine disease, but that Plaintiff's GERD (gastroesophageal reflux disease), hypertension, chronic obstructive pulmonary disease, and anxiety were not severe. (R. 14). Plaintiff does not contest this finding, and substantial evidence in the record supports Plaintiff's severe impairment of cervical spine disease and irreparable left rotator cuff tear were severe impairments under 20 C.F.R. §§ 404.1521(b), 416.921(b).

In particular, on January 16, 2006, an MRI of Plaintiff's cervical spine showed "degenerative disk space narrowing and dessication changes . . . at the C3-4, C4-5, C5-6, and C6-7 disk spaces." (R. 288). An October 31, 2006, X-ray of Plaintiff's left shoulder showed "chronic superior subluxation of the head of the humerus in relationship to the glenoid fossa causing narrowing of the subacromion space which could lead to impingement of the rotator cuff." (R. 279). A residual functional capacity assessment on January 8, 2007, showed Plaintiff with limited range of motion of the left shoulder. (R. 329). On February 5, 2009, Dr. Robillard opined Plaintiff was very limited in the ability to lift, carry, pull, push, bend, and use his hands, maintain basic standards

of personal hygiene and grooming, or function in a work setting at a consistent pace, thereby meeting the requirement of severity under § 404.1521(b). Thus, substantial evidence in the record supports Plaintiff had the severe impairments of cervical spine disease and irreparable left rotator cuff tear.

### D.    Listing of Impairments, Appendix 1

The third step is to determine whether a claimant's impairment or impairments are listed in the regulations at Appendix 1 of 20 C.F.R. Pt. 404, Subpt. P ("The Listing of Impairments"). If the impairments are listed in the Appendix, and the duration requirement is satisfied, the impairment or impairments are considered severe enough to prevent the claimant from performing any gainful activity and the claimant is considered disabled. 20 C.F.R. §§ 404.1525(a), 416.925(a); *Melville v. Apfel*, 198 F.3d. 45, 51 (2d Cir. 1999) ("if the claimant's impairment is equivalent to one of the listed impairments, the claimant is considered disabled").

The relevant listings of impairments in this case include 20 C.F.R. Pt. 404, Subt. P, Appendix 1, § 1.02B (major dysfunction of a joint(s) due to any cause) (§ 1.02B), and 20 C.F.R. Pt. 404, Subt. P, Appendix 1, § 1.04 (disorders of the spine) (§ 1.04).

Relevant to the instant case, disability under § 1.02B (major dysfunction of a joint(s) due to any cause), is characterized by

> gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s) With:
> B. Involvement of one major peripheral joint <u>in each upper extremity </u>(i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross

motor movements effectively, as defined in 1.00B2c.

20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 1.02B. (Underlining added).

Pursuant to § 1.00B2c, "[i]nability to perform fine and gross movements effectively means an extreme loss of function of both upper extremities; *i.e..*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." Examples of inability to perform find and gross movements effectively include "the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level." In this case, the ALJ, as required, evaluated Plaintiff's impairments under 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526 directed to consideration of the Listing of Impairments, and determined Plaintiff's "left rotator cuff and left shoulder impingement syndrome [did] not result in the inability to perform fine or gross motor movements as defined by Listing 1.00(B)(2) because his impairment d[id] not affect both of his upper limbs, thus the severity of Listing 1.02(B) ha[d] not been met." (R. 15). This finding is supported by substantial evidence in the record.

Specifically, although Plaintiff's X-ray on October 31, 2006, showed "chronic superior subluxation of the head of the humerus in relationship to the glenoid fossa causing narrowing of the subacromion space which could lead to impingement of the rotator cuff" (R. 279), the record is devoid of substantial evidence that Plaintiff's irreparable left shoulder rotator cuff tear resulted in an inability to perform fine and gross movements effectively, and any evidence Plaintiff's right upper extremity was impaired. For example, Plaintiff testified he does laundry (R. 36), cooks (R. 35), does

15

dishes (R. 33), and is able to lift objects to waist level (R. 36). Thus, substantial evidence in the record establishes Plaintiff's left rotator cuff tear did not result in an inability to perform fine and gross motor movements as required under § 1.02B.

Substantial evidence in the record also supports Plaintiff's nerve root compression was not accompanied by limitation of motion of the spine, motor loss, (atrophy with associated muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) required under § 1.04A. In particular, on October 31, 2006, Dr. Schwab noted Plaintiff's cervical spine showed "full flexion, extension, lateral flexion bilaterally, . . no scoliosis, kyphosis, or abnormality in the thoracic spine." (R. 277). On September 20, 2006, Dr. Robillard evaluated Plaintiff with 2+ symmetric reflexes (R. 300), and this, without more, does not rise to the level of severity required under § 1.04A. The record thus supports the ALJ's finding Plaintiff's spinal impairment, although severe, is not sufficiently severe to meet the criteria of § 1.04A of the Listing of Impairments.

The court next considers whether Plaintiff, despite his severe impairments, retains the residual functional capacity to work.


### E.     "Residual Functional Capacity" to Perform Past Work

The fourth inquiry in the five-step analysis is whether the applicant has the "residual functional capacity" to perform past relevant work. "Residual functional capacity" is defined as the most work a claimant can still do despite limitations from an impairment and/or its related symptoms. 20 C.F.R. § 416.945(a). If a claimant's residual functional capacity is insufficient to allow the performance of past relevant work, the

ALJ must assess the claimant's ability to adjust to any other work. 20 C.F.R. § 416.960(c). Here, the ALJ found Plaintiff was unable to perform his past relevant work (R. 21). That finding is undisputed. The ALJ further found Plaintiff retained the residual functional capacity to perform light work as defined under 20 C.F.R. §§ 404.1569 and 404.1569a, with the limitation of lifting up to ten pounds occasionally, never reaching overhead with the dominant left arm, never fingering or handling with the left dominant arm, and avoiding concentrated exposure to pulmonary irritants such as fumes, dust, and odors. (R. 15).

### F.    Suitable Alternative Employment in the National Economy

Once the claimant has established he cannot perform any past relevant work, because of his impairments, the burden shifts to the Commissioner to prove substantial gainful work exists and that the plaintiff is able to perform in light of her physical capabilities, age, education, experience, and training. *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

In this case, the ALJ concluded Plaintiff was unable to perform his past relevant work as a short order cook (semi-skilled, light work), cook (skilled, medium work), or restaurant manager (skilled, light work) (R. 21), and this finding is not disputed. The ALJ, however, found Plaintiff able to perform light work, albeit, less than the full range of light work, and that sufficient light work exists in the regional economy which Plaintiff is able to perform. (R. 21). Plaintiff disputes this finding.

The Second Circuit requires that "all complaints . . . must be considered together in determining . . . work capacity." *DeLeon v. Secretary of Health and Human Services,*

734 F.2d 930, 937 (2d Cir. 1984). It is improper to determine a claimant's residual work capacity based solely upon an evaluation of the severity of the claimant's individual complaints. *Gold v. Secretary of Health and Human Services*, 463 F.2d 38, 42 (2d Cir. 1972). To make such a determination, the Commissioner must first show that the applicant's impairment or impairments are such that they permit certain basic work activities essential for other employment opportunities. *Decker v. Harris*, 647 F.2d 291, 294 (2d Cir. 1981). Specifically, the Commissioner must demonstrate by substantial evidence the applicant's "residual functional capacity" with regard to the applicant's strength and "exertional capabilities." *Id*. at 294.

An individual's exertional capability refers to the performance of "sedentary," "light," "medium," "heavy," and "very heavy" work.[7] *Decker*, 647 F.2d at 294. In addition, the Commissioner must prove that the claimant's skills are transferrable to the new employment, if the claimant was employed in a "semi-skilled" or "skilled" job.[8] *Id*. at

---

[7] "Sedentary work" is defined as: "lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools....Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §404.1567(a).

[8] The regulations define three categories of work experience: "unskilled", "semi-skilled", and "skilled". *Decker, supra*, at 295.

"Un-skilled" is defined as: "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength....primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in thirty days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs."
20 C.F.R. §404.1568(a).

"Semi-skilled work" is defined as: "work which needs some skilled but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks."
20 C.F.R. §404.1568(b).

294. This element is particularly important in determining the second prong of the test, whether suitable employment exists in the national economy. *Id.* at 296. Where applicable, the Act's Medical-Vocational guidelines may be used to meet the Secretary's burden of proof concerning the availability of alternative employment and supercede the requirement vocational expert testimony regarding specific jobs a claimant may be able to perform in the regional or national economy. *Heckler v. Campbell*, 461 U.S. 458, 462 (1983).

Plaintiff, contests that the ALJ "failed to consider the medical evidence and opinions and the fact that the Plaintiff's disability forced him out of skilled and then unskilled jobs," failed to have the Vocational Expert address the proper disabilities and limitations in the hypotheticals posed to the VE, that the VE rendered an unsupported opinion regarding potential job possibilities, and was not asked his opinion as to what constituted a significant number of jobs in the Western New York region, failed to address the fact Plaintiff does not have use of his dominant left arm/hand, and that "the ALJ and Appeals Council . . . both ignored the medical evidence and that [Plaintiff's] residual functional capacity does not . . . include the ability to perform 'the full range of sedentary work' and . . . this plus [Plaintiff's] age and lack of transferable work skills completely erodes any job base available to him." (Doc. 1). On the other hand, substantial evidence in the record supports Plaintiff's limitation to sedentary residual functional capacity, age, education, and lack of transferable job skills necessitates a finding of disability under 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 1.

In instances where nonexertional limitations diminish a claimant's ability to perform the full range of "light" work, the ALJ should require the Secretary to solicit

testimony from a vocational expert regarding the availability of jobs in the national and regional economies suitable for employment of an individual with exertional and nonexertional  limitations similar in nature to the claimant's. *Bapp v. Bowen*, 802 F.2d 606, 501 (2d Cir. 1986). Following a vocational expert's testimony, a plaintiff must be afforded an opportunity to rebut the expert's evidence. *Nelson v. Bowen*, 882 F.2d 45, 49 (2d Cir. 1989). In the instant case, the ALJ concluded Plaintiff was unable to perform any past relevant work as a cook (skilled, medium), short order cook (light, semi-skilled), or restaurant manager (light, skilled work) because of Plaintiff's weight lifting limitations. (R. 21, 41).

The Act requires the ALJ utilize the same residual functional capacity assessment used to determine if a claimant can perform past relevant work when assessing a claimant's ability to perform other work. 20 C.F.R. § 404.1560(c)(2). "Hypothetical questions asked of the vocational expert must 'set out all of the claimant's impairments.'" *Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001) (citing *Gamer v. Secretary of Health and Human Services*, 815 F.2d 1275, 1279 (9th Cir. 1987)).

Here, the ALJ also posed hypothetical exertional and non exertional limitations to the VE related to Plaintiff's limitations (R. 41-42), and the VE reviewed Plaintiff's credentials and limitations, and concluded that a substantial gainful employment opportunities in the national and regional economy exist that an individual of the same age and education as Plaintiff, who was capable of, at most, light and/or sedentary exertion, was capable of performing. (R. 42). The ALJ posed a hypothetical situation to the VE that included limitations particular to Plaintiff, including, can sit up to eight hours in a day, can stand or walk up to eight hours in a day, lift up to ten pounds occasionally,

no overhead reaching with the left dominant arm or shoulder, no fingering or handling with the left hand, and avoid concentrated exposure to fumes, dust, and odors. (R. 41). The VE opined that Plaintiff, including the limitations posed to the VE by the ALJ, and Plaintiff's limitation of lifting ten pounds occasionally, would be capable at most of performing sedentary jobs. (R. 42). The ALJ posed a second hypothetical to the VE to include "light jobs," and the VE opined that positions available to Plaintiff of jobs in the light job classification that require only occasional reaching include usher (light, unskilled), or lobby attendant (light, unskilled), with 115,249 positions in the national economy, and 450 jobs in the Western New York region, and school bus monitor (light, unskilled) with 17,745 positions available nationally, and 479 jobs in the Western New York region. (R. 42). Under cross–examination, the VE opined an individual able to stand less than two hours would not be able to perform the duties of lobby attendant/usher (R. 46), and an individual able to work at a sedentary exertional level would not be able to perform the job of school bus monitor. (R. 48).

Despite the VE's responses to the posed hypotheticals, the ALJ found Plaintiff had the residual functional capacity to perform light work with the restriction of lifting up to ten pounds occasionally, never finger or handle items with the left dominant hand, and no reaching overhead with the left dominant arm. (R. 15). The ALJ's finding Plaintiff was capable of performing light work with a limitation of lifting up to ten pounds occasionally, however, is without substantial evidence in the record.

20 C.F.R. § 404.1567(a) defines sedentary work as

[i]nvolv[ing] lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and

standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary work criteria are met.

20 C.F.R. § 404.1567(a).

Light work is defined as

[i]nvolv[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

20 C.F.R. § 404.1567(b).

As relevant to whether substantial evidence supports the ALJ's conclusion that Plaintiff can perform light work, Dr. Robillard, Plaintiff's treating physician, opined Plaintiff was unable to lift more than three pounds with his left arm (R. 450), and was very limited in lifting, carrying, using his hands, functioning in a work setting at a consistent pace, or maintaining basic standards of personal hygiene. (R. 454). On August 29, 2007, Blanka Heary, a physician assistant working under the supervision of Dr. Gosy, opined Plaintiff was unable to lift and carry up to five pounds with his left arm. (R. 353). Although a physical residual functional capacity assessment on January 8, 2007, by J. Hartner noted Plaintiff was able to frequently lift up to ten pounds, and occasionally lift up to twenty pounds, the assessment was performed two years in advance of Plaintiff's broken elbow and surgery to repair the elbow, and therefore was not based on substantial evidence in the record. (R. 327-32). In this case, the ALJ assigned controlling weight to Dr. Gosy's opinion Plaintiff was not capable of performing past work (R. 20), granted Dr. Robillard's opinion Plaintiff was "permanently disabled"

"less weight" because "diagnostic imaging and treatment notes did not establish the claimant as permanently disabled" (R. 20), and assigned Blanka Heary's opinion "lesser weight" because she was not a medical doctor (R. 21). Although an ALJ is responsible for a determination of the claimant's residual functional capacity, the ALJ must point to evidence to support his findings. *Snyder v. Astrue*, No. 09-0461, 2010 WL 2403795, at *7 (D. Del.June 11, 2010)(ALJ's residual functional capacity determination must be supported by substantial evidence in the record).

Here, substantial evidence in the record establishes that Plaintiff was unable to lift more than three to five pounds, less than the sedentary exertional level, possessed no more than a high school education, and that Plaintiff, at age fifty-two (at the date of the hearing), is considered a person closely approaching advanced age. 20 C.F.R. § 404.1563(d). The ALJ, however, did not address whether based on Plaintiff's past relevant work, Plaintiff had any transferable skills, which despite his sedentary residual functional capacity would lead to the conclusion Plaintiff was not disabled. 20 C.F.R. Pt. 404, Subpt. P, App.2, Table No. 1.[9]

Plaintiff was subsequently granted benefits based upon the same evidence and the same disability before the ALJ in the instant action, Procedural History, *supra*, at 2 and n. 1, Plaintiff's motion at 2, a fact which Defendant does not dispute, as of April 24, 2009. Given that, as of April 24, 2009, Plaintiff, as in this case, would have been classified under the relevant vocational guidelines as closely approaching advanced

---

[9]20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 1, Rule 201.14 directs that an individual closely approaching advanced age, with education of a high school graduate or more, that does not provide for direct entry into skilled work, and has skilled or semi-skilled skills that are not transferable, is disabled for purposes of the Act.

age, possessed the same education level, had no new work experience, and been limited to sedentary exertional level, the only logical conclusion is that the skills Plaintiff acquired from his past relevant work were not transferable. As such, the court finds that Plaintiff also, with regard to the instant action, possessed no transferrable skills from his past relevant work, thus requiring the same finding on this application, *i.e.*, that Plaintiff is disabled. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 1, Rule 201.14.

Therefore, substantial evidence in the record supports a finding, contrary to the ALJ's decision, Plaintiff is disabled under 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 1.

## **CONCLUSION**

Based on the foregoing, Defendant's motion (Doc. No. 7) should be DENIED, Plaintiff's motion (Doc. No. 9) should be GRANTED; and the matter should be remanded for calculation of benefits. The Clerk of the Court should be instructed to close this file in accordance with this Report and Recommendation.

Respectfully submitted,

/s/ *Leslie G. Foschio*
_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED: January 13, 2011
      Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that the Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to the Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of service of the Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:     January 13, 2011
            Buffalo, New York